1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICKY L. BROWN,                          No.  2:11-cv-00093 JAM JFM (PC)

12              Plaintiff,

13        v.                                  FINDINGS & RECOMMENDATIONS

14   J. MCCULLOUGH, et al.,

15              Defendants.

16

17   I.  Introduction

18         Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  This case is proceeding on the first amended complaint, filed April 8, 2011.

20   ECF No. 13.  Plaintiff alleges that defendant J. McCullough used excessive force against him in

21   violation of his Eighth Amendment rights.[1]

22         Pending before the court is defendant's motion for summary judgment.  Defendant moves

23   for summary judgment on the grounds that his use of force was a reasonable attempt at restoring

24   order, and that he is entitled to qualified immunity.  As explained below, the court recommends

25   that the motion for summary judgment be granted.

26   _____

[1] In his original complaint, plaintiff named J. McCullough, K. Taylor-Thomas, B. Priolo, J.

27   Micone, N. Hubbard and T. Perez as defendants.  ECF No. 1.  Following the court's dismissal of
     his complaint, plaintiff changed defendants and named only J. McCullough and J. Micone.  ECF

28   No. 13.  On July 24, 2013, the court issued an order dismissing defendant J. Micone, pursuant to
     plaintiff's request.  ECF No. 51.

II. <u>Plaintiff's Allegations</u>

In his verified April 8, 2011 first amended complaint, plaintiff alleges that on January 1, 2009, he was attacked by two inmates while on the exercise yard on the prison grounds. ECF No. 13 at 2. Plaintiff alleges that during the altercation with the two inmates, defendant fired a 40mm launcher and shot him in the head. <u>Id.</u> Plaintiff alleges he suffered an injury as a result of being shot in the head. <u>Id.</u> Plaintiff alleges he was shot several more times during the altercation, and was struck in his back and upper buttocks. <u>Id.</u> Plaintiff alleges that defendant used excessive force against him by shooting him with four rounds from the 40mm launcher when he was the victim in the altercation. <u>Id.</u> at 4. Plaintiff further alleges that shooting him in the head was more force than was necessary. <u>Id.</u>

III. <u>Facts</u>

For the purpose of the instant motion for summary judgment, the court finds the following facts undisputed.

1.  Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and is currently incarcerated at California State Prison, Corcoran. Statement of Undisputed Facts ("SUF") ¶ 1 (ECF No. 42-3).

2.  The incident at issue here took place on January 1, 2009, while plaintiff was incarcerated at High Desert State Prison ("HDSP"). SUF ¶¶ 2-3.

3.  Defendant is a correctional officer employed by the CDCR at HDSP. On January 1, 2009, defendant was assigned to the Facility D, Building 4 control booth. McCullough Decl. ¶¶ 1-2 (ECF No. 42-4).

4.  On January 1, 2009, at approximately 1:55 p.m., an inmate attacked plaintiff in Facility D's lower yard by striking him from behind in the head. SUF ¶¶ 3-4.

5.  A correctional officer ordered the inmates to "get down." SUF ¶ 6; Brown Dep. 31:12-15 (ECF No. 42-16 at 91).

6.  Several correctional officers responded to the altercation by forming a skirmish line in an effort to prevent the altercation from escalating. SUF ¶¶ 7-9.

////

2

7. A second inmate joined the attack on plaintiff and assaulted him in the head and torso.  SUF ¶ 10.

8. Correctional officers, including defendant, were ordering the inmates to "get down," and all inmates but the three involved in the altercation complied with those orders.  SUF ¶¶ 12-14, 47.

9. Some of the details concerning what took place next are disputed:

   A. While acknowledging that plaintiff was the victim of an attack by two inmates, defendant contends that plaintiff was also striking the two aggressor inmates.  SUF ¶ 11.  On the other hand, plaintiff contends that his "only physical response to the attack . . . was in self[-]defense."  ECF No. 50 at 3.

   B. It is undisputed that defendant fired four rounds from the control tower using a 40mm launcher in an effort to quell the altercation.  It is also undisputed that the inmates continued to fight while defendant fired all four rounds, and the fighting did not end until after the fourth round was fired.[2]  SUF ¶ 43; ECF No. 50 at 9.  However, the parties dispute the number of times plaintiff was struck by the 40mm rounds.  Defendant argues that plaintiff was struck in the buttocks by only one round from the 40mm launcher.  SUF ¶¶ 21, 25, 36, 39.  Plaintiff argues he was struck by three or four rounds in the head, back and buttocks.  ECF No. 50 at 2 (three rounds) and ECF No. 50-1 at 2 (four rounds); ECF No. 50 at 8; ECF No. 13 at 2.  For summary judgment purposes, the court will assume that plaintiff was struck by four rounds, and that one of the rounds struck plaintiff in the head.

   C. Plaintiff submitted the declaration of inmate Bryant Allen who declares he witnessed plaintiff "being attacked[] by two inmates."  ECF No. 50-2 at 2.  Inmate Allen declares:

   > I saw the correctional officer in D4-control tower firing several rounds from the block gun and hit [plaintiff] directly in his head[.] . . . [T]he tower officer kept yelling to the inmates who were attacking [plaintiff] to get down as [plaintiff] was still being attacked.

---

[2]  Plaintiff states he disagrees with the statement that the three inmates continued to fight.  ECF No. 50 at 6.  However, his dispute appears to be based on his assertion that he was a victim during the altercation, and was only responding in self-defense to the other inmates who were the aggressors.  Plaintiff does not appear to dispute the fact that the altercation continued until after defendant fired four rounds from the 40mm launcher.

Id.

    D. Defendant contends that after he fired two rounds from the 40mm launcher the altercation appeared to be over because the inmates took a prone position. SUF ¶¶ 29-30. Defendant contends that after the inmates separated, plaintiff walked towards the two inmates who were attacking him and started striking one of them in the head and upper torso area. SUF 31. Plaintiff disputes these statements. ECF No. 50 at 7. However, plaintiff provided no evidence to show that these facts are in dispute other than his statement that he disagrees with these facts.

10. Two additional inmates separately attempted to join the altercation.[3] SUF ¶¶ 33, 44. One inmate was successful in joining the attack on plaintiff. SUF ¶ 33. The second inmate was intercepted by correctional staff and prevented from joining the fighting inmates by being sprayed with pepper spray. SUF ¶ 44; Delgado Decl. Ex. G (ECF No. 42-16).

11. A CN 109 oleoresin capsicum pocket grenade was used in an effort to quell the fighting inmates. SUF ¶ 42. When the pocket grenade dispersed white smoke, the inmates ceased fighting and got down on the ground in prone position. SUF ¶ 43.

12. Following the altercation, plaintiff was taken to the triage and treatment area where his injuries were documented. SUF ¶¶ 48-50. Plaintiff sustained several injuries including a laceration on the top of his head and a lateral tear below his right eye. SUF ¶ 50.

13. Plaintiff was then seen by a physician's assistant. SUF ¶ 52. Plaintiff told the physician's assistant that he had been shot in the head and the laceration on his head was caused by the gunshot. SUF ¶¶ 53-54.

14. Plaintiff was interviewed by officers from HDSP's Investigative Services Unit regarding the altercation. SUF ¶ 56. Plaintiff told the officers that his head injury was caused by the "block gun." SUF ¶ 57.

15. Plaintiff was transferred to Renown Regional Medical Center in Reno, Nevada, where he told the physician there that he had been shot in the head with a "rubber bullet." SUF ¶¶ 61-62.

---

[3] Plaintiff disputes this fact regarding one of the inmates, but provided no evidence in support of his disagreement.

1  16. A Rules Violation Report ("RVR") was issued charging plaintiff with fighting in violation of

2  state law.  SUF ¶ 64; Delgado Decl. Ex. M.  Specifically, the RVR states that plaintiff was

3  "striking at the head and upper torso areas" of the two inmates who attacked him.  Id.  The

4  RVR also states that plaintiff got back up after the inmates separated and began striking one

5  of the inmates on the head again thereby continuing the altercation.  Id.  Plaintiff pled guilty

6  to the charge of fighting and declined to make a statement regarding the charged offense.  Id.

7  It appears from the record that plaintiff did not appeal the RVR.

8  IV.  Legal Standards for Summary Judgment

9      Summary judgment is appropriate when it is demonstrated that the standard set forth in

10  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

11  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

12  judgment as a matter of law."  Fed. R. Civ. P. 56(a).[4]

13
14
> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
15
16

17  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

18  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

19  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

20  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

21  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

22  Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

23  burden of production may rely on a showing that a party who does have the trial burden cannot

24  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

25  should be entered, after adequate time for discovery and upon motion, against a party who fails to

26  make a showing sufficient to establish the existence of an element essential to that party's case,

27  [4]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
28  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

2   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

3   necessarily renders all other facts immaterial."  Id. at 323.

4            Consequently, if the moving party meets its initial responsibility, the burden then shifts to

5   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

6   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

7   establish the existence of such a factual dispute, the opposing party may not rely upon the

8   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

9   form of affidavits, and/or admissible discovery material in support of its contention that such a

10  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

11  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

12  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

13  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

15  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

16  (9th Cir. 1987).

17           In the endeavor to establish the existence of a factual dispute, the opposing party need not

18  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

19  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

20  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

21  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

22  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

23  amendments).

24           In resolving a summary judgment motion, the court examines the pleadings, depositions,

25  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

26  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

27  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

28  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

1   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

2   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

3   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

4   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

5   some metaphysical doubt as to the material facts. . . . Where the record taken

6   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

7   'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

8       By notice issued November 29, 2012, plaintiff was advised of the requirements for

9   opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See

10  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d

11  409 (9th Cir. 1988).

12  V.  Legal Standards for the Eighth Amendment

13      The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

14  Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and

15  unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S.

16  312, 319 (1986).  Neither accident nor negligence constitutes cruel and unusual punishment, as

17  "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

18  conduct prohibited by the Cruel and Unusual Punishments Clause."  Id.

19      What is needed to show unnecessary and wanton infliction of pain "varies according to

20  the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992)

21  (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim the plaintiff must

22  show that objectively he suffered a "sufficiently serious" deprivation.  Farmer v. Brennan, 511

23  U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The plaintiff must also

24  show that subjectively each defendant had a culpable state of mind in allowing or causing the

25  plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

26      It is well established that "whenever prison officials stand accused of using excessive

27  physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry

28  is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or

1    restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7.  A

2    prisoner is not required to show a "significant injury" to establish that he suffered a sufficiently

3    serious constitutional deprivation. Id. at 9-10.

4         Factors such as the need for the application of force, the relationship between the need and

5    amount of force that was used, and the extent of injury inflicted are relevant to the ultimate

6    determination as to whether force used by prison personnel was excessive. Whitley, 475 U.S. at

7    321.  From these factors, inferences may be drawn as to whether the use of force could plausibly

8    have been thought necessary, or instead evinced such wantonness with respect to the unjustified

9    infliction of harm as is tantamount to a knowing willingness that it occur.  "Equally relevant are

10   such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived

11   by the responsible officials on the basis of facts known to them, and any efforts made to temper

12   the severity of a forceful response." Whitley, 475 U.S. at 321.

13        Thus, there is no Eighth Amendment violation if "force was applied in a good-faith effort

14   to maintain or restore discipline." Hudson, 503 U.S. at 7.  Courts accord wide-ranging deference

15   to prison administrators in the exercise of policies and practices that in their judgment are needed

16   to preserve internal security, safety and discipline. Whitley, 475 U.S. at 322-23.  The infliction of

17   pain in the course of implementing prison security measures does not amount to cruel and unusual

18   punishment even though it may appear, in hindsight, the degree of force was unreasonable. Id. at

19   319.  An allegation of cruel and unusual punishment should proceed to trial only if the evidence

20   supports a reliable inference that the prison official intended to inflict pain. Id. at 322.

21   VI.  Discussion

22        Defendant seeks summary judgment on the ground that he acted in good faith to restore

23   order and maintain discipline, and is therefore entitled to qualified immunity.  Essentially,

24   defendant contends that the evidence establishes he did not intend to harm plaintiff, but was

25   trying to stop the inmates from fighting on the yard in an effort to restore order and maintain

26   discipline.  Plaintiff argues that he was the victim of an attack by two inmates, and therefore it

27   was malicious and sadistic for defendant to shoot him.  For the reasons discussed below, the court

28   finds that defendant is entitled to qualified immunity, and his motion for summary judgment

1   should be granted.

2   A. Qualified Immunity Standard

3          The doctrine of qualified immunity protects government officials from civil liability

4   where "their conduct does not violate clearly established statutory or constitutional rights of

5   which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)

6   (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two

7   important interests—the need to hold public officials accountable when they exercise power

8   irresponsibly and the need to shield officials from harassment, distraction, and liability when they

9   perform their duties reasonably." Pearson, 555 U.S. at 231. Because qualified immunity is "an

10  immunity from suit rather than a mere defense to liability," it must be resolved at the "earliest

11  possible stage in litigation." Id. at 231-32.

12         To determine if an official is entitled to qualified immunity the court determines (1) if the

13  facts as alleged state a violation of a constitutional right and (2) if the right is clearly established

14  so that a reasonable official would have known that his conduct was unlawful. Ashcroft v. al-

15  Kidd, ___ U.S. ___, 131 S.Ct. 2074, 2080 (2011). A negative answer to either question means

16  immunity from suit is appropriate. Pearson, 555 U.S. at 236. District courts are "permitted to

17  exercise their sound discretion in deciding which of the two prongs of the qualified immunity

18  analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

19         Herein, the prongs of the qualified immunity analysis will be addressed in the order they

20  are listed above. As to the first prong, the court must determine if the facts as alleged state a

21  violation of plaintiff's constitutional right. Ashcroft, 131 S.Ct. at 2080. For the reasons stated

22  below, the court finds no use of excessive force and therefore will not consider the second prong

23  of the analysis. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

24  B.  Analysis of Defendant's Motion for Summary Judgment

25         The crux of plaintiff's argument is that because he was the victim of an attack by at least

26  two inmates, it was malicious and sadistic for defendant to shoot him with the 40mm launcher

27  rather than the inmates who were the aggressors in the altercation.

28  ////

9

1    Excessive force does not amount to a constitutional violation if it is applied in a good faith

2    effort to restore discipline and order and not "maliciously and sadistically for the very purpose of

3    causing harm." Whitley, 475 U.S. at 320-21.  "This standard necessarily involves a more

4    culpable mental state than that required for excessive force claims arising under the Fourth

5    Amendment[,] . . . not merely objectively unreasonable force." Clement, 298 F.3d at 903 (citing

6    Graham v. Connor, 490 U.S. 386, 398 (1989)).  However, "[e]ven under the lower Fourth

7    Amendment excessive force standard, the Supreme Court has admonished that officials 'can have

8    reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or

9    exigent circumstances, for example, and in those situations courts will not hold that they have

10   violated the Constitution.'" Clement, 298 F.3d at 903 (finding bystander inmates failed to

11   establish prison officials administered pepper spray "maliciously and sadistically for the very

12   purpose of causing harm") (quoting Saucier, 533 U.S. at 206).

13          Here, even accepting plaintiff's allegations -- that he was the victim of an attack by two

14   inmates, that he was shot four times by defendant during the attack, and that he sustained an

15   injury to his head as a result of one of those shots -- plaintiff has still failed to establish that

16   defendant fired any of the 40mm launcher rounds at him maliciously and sadistically for the very

17   purpose of causing harm. Clement, 298 F.3d at 903.  It is undisputed that defendant fired four

18   rounds from the 40mm launcher because the inmates continued to fight thereby necessitating

19   additional rounds in an effort to maintain order.  The court finds that an inference can "be drawn

20   as to whether the use of force could plausibly have been thought necessary." Whitley, 475 U.S. at

21   320-21.  At least three inmates were involved in a fight on the prison yard, and it is undisputed

22   that two more inmates attempted to join the fight at some point.  Some use of force was necessary

23   to quell the fight before it escalated into an uncontrollable situation such as a riot, which

24   "indisputably poses significant risks to the safety of inmates and prison staff." Whitley, 475 U.S.

25   at 324 (finding the intentional shooting of an inmate was part of a good faith effort to restore

26   prison security and did not violate the inmate's Eighth Amendment rights).  Thus, the court finds

27   that, given the circumstances, defendant's use of force was a good faith attempt at restoring order.

28   ////

1    With regard to plaintiff's assertion that he was the victim of the attack and therefore the

2    use of force on him was malicious and sadistic, the court finds that it was reasonable for

3    defendant to believe that shooting plaintiff was a good faith effort to restore order and prevent the

4    altercation from becoming uncontrollable.  From defendant's vantage point in the control tower,

5    he observed two inmates attack plaintiff, and an altercation between three inmates ensued.  While

6    plaintiff argues he was the victim of the attack, he provided no evidence to indicate that he was

7    not fighting with the other two inmates.  In fact, plaintiff admits to being involved in the

8    altercation, and was found guilty of fighting.[5]  Delgado Decl. Ex. M.  It is also undisputed that

9    plaintiff refused the correctional officer's orders to get down.  While plaintiff characterizes his

10   fighting and refusal to get down as necessary in self-defense, it was reasonable for defendant to

11   perceive plaintiff's actions as equally aggressive as he observed the altercation from the control

12   tower.  Thus, it was reasonable for him to shoot the 40mm launcher at plaintiff, who was part of

13   the altercation, in a good faith effort to restore discipline given defendant's reasonable belief that

14   the altercation posed a threat to the safety of staff and inmates.  Hudson, 503 U.S. at 6; Whitley,

15   475 U.S. at 321-22.

16       Plaintiff attempts to argue that defendant violated his constitutional rights because "other

17   methods of force could have been applied to secure the incident."[6]  ECF No. 50 at 5.  However,

18   the fact that the degree of force used appears unreasonable in hindsight is not in itself sufficient to

19   [5]  Plaintiff argues in his opposition that "[a]t no time before and after the Rule violation hearing
     did [he] ever admit that [he] was guilty of the charges of fighting the inmates that attacked

20   [him.]"  ECF No. 50-1 at 3.  However, the RVR clearly states that plaintiff was charged with
     fighting, that plaintiff pled guilty to the charges, and that plaintiff was subsequently found guilty

21   of fighting.  Delgado Decl. Ex. M.  Plaintiff provided no evidence to establish a dispute of this
     fact (i.e. a favorable decision on appeal of the RVR).

22

23   [6] In his motion, defendant submitted the declaration of M. Lindsey, a Range Master and Armory
     Officer at HDSP.  ECF No. 42-6.  Lindsey's declaration explains the different types of rounds

24   that can be used by the 40mm launcher: a 60-caliber rubber ball, a wood baton or the XM-1006
     exact impact round.  Lindsey Decl. ¶¶ 8-11.  The XM-1006 is the safest of the three types of
     rounds.  Lindsey Decl. ¶ 12.  The XM-1006 exact impact round was used by defendant during the

25   altercation at issue because, in defendant's experience, it "is the safest and most accurate round
     available for that weapon."  McCullough Decl. ¶ 13.  Plaintiff attempts to argue that the type of

26   rounds defendant used were rubber balls, not the XM-1006 exact impact rounds, and that this type
     of bullet was "discontinued because of advers[e] injuries to prisoners."  ECF No. 50-3 at 3,8.

27   However, plaintiff provided no evidence to support his arguments.  Notwithstanding plaintiff's
     disagreement, the type of bullet used is not dispositive to the court's analysis.  See Whitley, 475

28   U.S. at 319.

11

1    establish a constitutional violation.  Whitley, 475 U.S. at 319.  Prison officials are "accorded

2    wide-ranging deference in the adoption and execution of policies and practices that in their

3    judgment are needed to preserve internal order and discipline and to maintain institutional

4    security."  Id. at 321-22 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).  Correctional

5    officers must make their decisions "in haste, under pressure, and frequently without the luxury of

6    a second chance."  Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 320).  The inquiry here is

7    whether defendant's actions were applied in a good faith effort to maintain or restore discipline.

8    Id. at 320-21.  As discussed above, the court finds that there is no evidence from which an

9    inference could be drawn that defendant's subjective state of mind was to maliciously harm

10   plaintiff.  The evidence shows that defendant's subjective state of mind was to stop the altercation

11   plaintiff was involved in, and the forced used with the 40mm launcher was applied in a good faith

12   effort to prevent the altercation from escalating.  See Raspberry v. Trevino, No. 1:08-cv-01767

13   AWI GSA PC, 2012 WL 2610681, at *2-8 (E.D. Cal. July 5, 2012) (analyzing the Hudson factors

14   and finding defendant correctional officer did not use excessive force when he shot an inmate in

15   the back of the head while the inmate was defending himself during an altercation because the

16   evidence established the shots were "taken in a good faith effort to restore order and maintain

17   discipline"), adopted in full, No. 1:08-cv-01767 AWI GSA PC, ECF No. 58 (E.D. Cal. Sept. 17,

18   2012).

19        Therefore, the court finds that plaintiff fails to raise a triable issue of fact regarding

20   whether defendant violated his Eighth Amendment rights.

21   IV.  Conclusion

22        Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary

23   judgment (ECF No. 42) be granted.

24        These findings and recommendations are submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

26   after being served with these findings and recommendations, any party may file written

27   objections with the court and serve a copy on all parties.  Such a document should be captioned

28   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 1, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

brow0093.msj.kjn

13